☐ Original   ☐ Dup

CLERK'S OFFICE
A TRUE COPY
May 17, 2024
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>cellular telephone assigned cell number (414)<br>295-1083 (Target Cell Phone), whose provider is<br>Verizon Wireless; (See Attachments) | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. **24-M-419 (SCD)**

**Matter No.: 2024R00096**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:  Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____5-31-24_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable Stephen C. Dries_____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*  ☑ until, the facts justifying, the later specific date of _____8/15/24_____ .

Date and time issued:  _____5-17-24. 10:15 am_____

*Stephen C. Dri* [signature]
*Judge's signature*

City and state:  _____Milwaukee, Wisconsin_____   Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

Property to Be Searched

1.  The cellular telephone assigned cell number **(414) 295-1083 (Target Cell Phone)**, whose service provider is Verizon Wireless, a wireless telephone service provider headquartered in North Palm Beach, FL.

2.  Information about the location of the **(414) 295-1083 (Target Cell Phone)** that is within the possession, custody, or control of Verizon Wireless.

**ATTACHMENT B**

Particular Things to be Seized

All information about the location of the **(414) 295-1083 (Target Cell Phone)** described in Attachment A for a period of forty-five days, during all times of day and night. "Information about the location of the **(414) 295-1083 (Target Cell Phone)**includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon Wireless, Verizon Wireless is required to disclose the Location Information to the government. In addition, Verizon Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon Wireless' services, including by initiating a signal to determine the location **(414) 295-1083 (Target Cell Phone)** on Verizon Wireless' network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2). This warrant does not authorize the seizure of any tangible property. In

approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
May 17, 2024
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>cellular telephone assigned cell number (414) 295-1083<br>(Target Cell Phone), whose provider is Verizon Wireless;<br>(See Attachments) | ) ) ) ) ) ) | Case No. **24-M-419 (SCD)**<br>**Matter No.: 2024R00096** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❐ contraband, fruits of crime, or other items illegally possessed;

❐ property designed for use, intended for use, or used in committing a crime;

❐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1), 846 & 843(b) | Distribution of a Controlled Substance, Conspiracy to Distribute a Controlled Substance, and Unlawful Use of a Communication Facility |

The application is based on these facts:

See attached Affidavit

❐ Continued on the attached sheet.

☑ Delayed notice of __90__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

MATTHEW COOPER (Affiliate)  Digitally signed by MATTHEW COOPER (Affiliate)
Date: 2024.05.16 15:40:54 -05'00'

*Applicant's signature*

Matthew J. Cooper, DEA Task Force Officer

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

__Telephone_____ *(specify reliable electronic means)*.

Date: __5-17-24__

*Judge's signature*

City and state: __Milwaukee, Wisconsin__    Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**
**Matter No.: 2024R000096**

I, Matthew J. Cooper, being first duly sworn, hereby depose and state as follows:

## I.     INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c) (1) (A) for information about the location of the cellular telephone assigned cell number **(414) 295-1083** (**"Target Cell Phone"**), whose cell phone provider is Verizon Wireless, a wireless telephone service provider headquartered in New York, New York. The **Target Cell Phone** is described herein, and in Attachment A, and the location information to be seized is described herein, and in Attachment B.

2.     I am employed as a Detective with the Milwaukee Police Department and have been a law enforcement officer for over 26 years. I have been a Detective for over 20 years and have been assigned to conduct narcotics investigations for over 19 years. I was previously assigned to the Vice Control Division (Narcotics) as a Police Officer for over 2 years. I have been assigned to the High Intensity Drug Trafficking Area (HIDTA) for over 16 years. I am also a Task Force Officer with the United States Department of Justice, Drug Enforcement Administration (DEA), and have been since October, 2008. As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3.     I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including

Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. I have had both formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps. More specifically, my training and experience includes the following:

a.     I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b.     I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

c.     I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

d.     I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e.     I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f.     I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g.     I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h.     I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

i.     I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j.      I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

4.      I am currently participating in an investigation of a money laundering organization (MLO) operating in the Milwaukee, Wisconsin area. According to confidential source information, this MLO collects drug proceeds from drug trafficking organizations (DTOs) operating in the Milwaukee area. Members of this MLO also operate in cities throughout the United States at the direction of members of Mexican drug cartels. Money brokers operating in Mexico and Colombia arrange for couriers operating throughout the United States to pick up drug proceeds from multiple drug trafficking organizations. The drug proceeds are then transferred to other money couriers or deposited into bank accounts or cryptocurrency wallets utilized by drug traffickers and money launderers to launder proceeds of drug sales.

5.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841, 846, and 843(b) have been committed, are being committed, and will be committed by the user of **(414) 295-1083** ("**Target Cell Phone**"), Lisandro SANDOVAL and others not yet identified. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## II.      PROBABLE CAUSE

6.      On February 18, 2024, a DEA confidential source, hereinafter referred to as "CS[1]," was contacted by a Colombia-based money broker (hereinafter "Broker #1"). Broker #1

---

[1] Case agents believe the CS's information is credible and reliable for the following reasons: the CS is working for financial consideration and has been working with law enforcement for over 3 years; information provided by the CS has been independently verified by law enforcement

requested the pickup of $250,000 in bulk currency, proceeds of drug trafficking, in Milwaukee, Wisconsin. The CS contacted Drug Enforcement Administration (DEA) Milwaukee District Office (MDO) case agents. Case agents provided the CS with a $1.00 bill serial number, E540303321, and an undercover telephone number to be used by a Milwaukee Police Department Police Officer who would be working in an undercover capacity and is hereinafter referred to as "UC." All calls and text messages to this number were recorded.

7. On February 20, 2024, from 2:03 p.m. to 2:05 p.m., the UC received five text messages from Mexico-based phone number 52-3346363048. The messages read: "Buenas," "Tardes," "E540303321," "https://whatsapp.com/dl/code=BBQgnw8yqg," and "Chatea conmigo en WhatsApp, una aplicacion rapida, simple y segura, con mensajes y llamadas gratis para comunicarnos. Descargala en." Essentially, the user of 52-3346363048 greeted the UC, confirmed the $1.00 bill serial number, and invited the UC to chat using WhatsApp. The UC was unable to chat using WhatsApp. Case agents informed the CS of this fact. The CS contacted Broker #1 who confirmed that conversations regarding the money pickup could take place using regular calls and text messages.

8. On February 21, 2024, at 10:14 a.m., the UC received a call from 52-3346363048. An unidentified male (UM) greeted the UC. The UM and the UC agreed to meet on Friday, February 23, 2024, at 9:00 a.m. The UM asked the UC to send him an address of where to meet. The UC confirmed the UM was in the Milwaukee area. The UC asked the UM how many "invitations" (how much money) he had. The UM stated he had "250 centimeters," which the UC took to be $250,000. The UC said he would send an address of where to meet. The UM

officials, and has led to the seizure of more than $5 million dollars, and the arrest of multiple individuals; and the CS is in a position where he/she regularly interacts with individuals who seek to distribute narcotics and narcotics proceeds, and the CS holds herself /himself out to participate in a narcotics-related business. The CS has a prior conviction for money laundering in Mexico.

then stated he had between 250 and 300 and by Friday it would be "300 centimeters," a reference to $300,000. The UC and the UM again agreed to meet on Friday at 9:00 a.m. On February 21, 2024, at 12:18 p.m., the UC sent a text message to 52-3346363048 that read, "Oiga ay le va dirección para recoger los materiales el viernes a las 9 de la mañana. La tienda se llama Target 1501 miller park way west milwaukee wi 53214 El codigo E54030332I." This message provided the UM with a meet location of Target, 1501 Miller Park Way, West Milwaukee, WI 53214. The message indicated the UC would meet at 9:00 a.m. on Friday and also confirmed the $1.00 bill serial number.

9. On February 22, 2024, at 3:47 p.m., the UC received two text messages from 52-3346363048 that read, "3737 s 27th st" and "Milwaukee 53221." Case agents are aware this is the location of a Kohl's department store. On February 22, 2024, at 3:50 p.m., the UC called 52-3346363048 and spoke to the UM. The UM told the UC he had sent him a text message with a location and asked to meet there. The UC said he would look at the message and let the UM know. On February 22, 2024, at 4:30 p.m., the UC sent a text message to 52-3346363048 that read, "Si ahí nos vemos mañana." Essentially, the message indicated the UC would see the UM at that location the next day.

10. On February 23, 2024, at 7:36 a.m., the UC sent a text message to 52-3346363048 that read, "Oiga le voy a mandar un mensaje cuando estoy allí a las nueve." Essentially, the message indicated that the UC would send the UM a message when he arrived at 9:00 a.m. On February 23, 2024, at 8:37 a.m., the UC received two text messages from 52-3346363048 that read, "Khols" (sic) and "Es la tienda de donde venden los manteles para las mesas de la fiesta." Essentially, this message confirmed the location was a Kohl's department store and that it was a store where tablecloths were sold for the party. On February 23, 2024, at 8:39 a.m., the UC

received a call from 52-3346363048. The UC told the UM he was on his way to meet. The UC told the UM he would call when he got closer. The UM stated he was going to be there already "looking at the tablecloths."

11. On February 23, 2024, at approximately 9:03 a.m., the UC departed a pre-determined location en route to Kohl's, 3737 South 27th Street, Milwaukee, Wisconsin. The UC was equipped with a covert recording and monitoring device which was activated prior to arriving at the Kohl's store. At 9:09 a.m., while still en route, the UC received a call from 52-3346363048. The UC told the male he was at a nearby stoplight. The UC also confirmed the description of his undercover vehicle. At approximately 9:10 a.m., the UC arrived at the Kohl's store and parked in the parking lot. At 9:17 a.m., the UC observed a gray 2016 Dodge Caravan, bearing Wisconsin license plates ATT-3145, stop close to his undercover vehicle. These license plates are registered to Lisandro SANDOVAL, 2658 South 14th Street, Milwaukee, Wisconsin. At 9:19 a.m., the UC received a call from 52-3346363048. The UM asked for the UC's location. The UC confirmed he was at the location and asked if the UM's associate was in a minivan. The UM said he was. The UC indicated he saw the associate and would verify the $1.00 bill code with the associate.

12. At 9:19 a.m., the UC observed the male driver of the Dodge Caravan, later identified as Lisandro SANDOVAL, open the rear sliding door of the Dodge Caravan. SANDOVAL then approached the undercover vehicle and entered the front passenger seat. The UC provided SANDOVAL with the $1.00 bill containing serial # E540303321. SANDOVAL appeared to be comparing the serial number to a photo on his phone or sending the serial number in a message. SANDOVAL then told the UC he would give the UC the money. SANDOVAL exited the undercover vehicle and returned to the Dodge Caravan. SANDOVAL opened the

passenger-side sliding door of the Caravan and retrieved a brown and orange Home Depot box, partially wrapped in duct tape. SANDOVAL returned to the undercover vehicle and placed the box on the front passenger floorboard. SANDOVAL began to close the door when the UC asked SANDOVAL for his phone number in case anything happened with the money. The UC asked SANDOVAL to write his phone number on the box. SANDOVAL wrote the phone number on a top flap of the Home Depot box as he was looking at his phone and wrote, "310-869-7867." The UC asked if the phone number was (310) 869-7867. SANDOVAL confirmed it was. SANDOVAL then closed the door to the undercover vehicle and returned to the Dodge Caravan. The UC then departed the Kohl's parking lot. Surveillance units maintained surveillance of SANDOVAL while other units followed the UC away from the area.

13. The UC was followed to a predetermined location. At 9:29 a.m., the UC sent a text message to 52-3346363048 that read, "Oiga todo salio bien con los manteles. Gracias." The message indicated that everything had gone well with the "tablecloths." Upon arrival at the predetermined location, case agents met with the UC and opened the Home Depot box. The box was found to contain 30 numbered (1-30) duct tape-wrapped packages believed to contain United States currency. Case agents transported the currency to the DEA-Milwaukee District Office where the duct tape was removed from the packages. Each package was found to contain United States currency wrapped in rubber bands and then wrapped in plastic before being wrapped in the duct tape. The currency, which totaled $299,480.00, was deposited to a DEA undercover bank account to be laundered further.

14. After SANDOVAL left the Kohl's parking lot, he was followed directly into a garage at 4210 South Ravinia Drive, Greenfield, Wisconsin. The UC later viewed a photo of Lisandro SANDOVAL and identified SANDOVAL as the person who gave him the Home

Depot box containing the currency.

15. On March 18, 2024, case agents established surveillance at 4210 South Ravinia Drive, Greenfield, Wiscons, for the purpose of observing the garage associated with Unit 207. At approximately 1:19 p.m., case agents observed a white Mercedes SUV, bearing Wisconsin license plate AWM6104, park in front of the garage. This vehicle is registered to Lisandro SANDOVAL, 2658 South 14th Street, Milwaukee, Wisconsin. Case agents observed the garage door open and an unidentified Hispanic male exit the driver's side of the Mercedes, wearing jeans, a maroon hoodie and a blue jacket, and enter the garage. Case agents could also see the gray Dodge Caravan, bearing Wisconsin license plates ATT-3145, parked inside the garage. As detailed above, this vehicle was previously observed during surveillance of the money pickup from Lisandro SANDOVAL on February 23, 2024. Shortly thereafter, the unidentified Hispanic male exited the garage, entered the white Mercedes, and left the area.

16. At approximately 1:50 p.m., case agents observed a black BMW SUV, bearing Illinois temporary registration 008134A13, park in front of the garage. This vehicle is registered to Yolanda CERVANTES and Juan PADILLA, 3520 W Mitchell St, Milwaukee, WI. Case agents are aware that Juan PADILLA was previously identified as a cocaine trafficker in the Milwaukee area. Case agents observed the garage door open, but did not observe anyone exit the vehicle or the garage. Due to heavy tint on the black BMW, agents were unable to see the driver or any passengers. The black BMW drove around the parking lot and appeared to be conducting counter surveillance multiple times. At one point, the black BMW attempted to park in front of and extremely close to a case agents vehicle in what case agents believe was an attempt to confront the case agent and prevent the case agent from driving away. This action caused the case agent to fear for their safety. The black BMW eventually left the area.

17. On March 11, 2024, the CS was contacted by a Mexico-based money broker, hereinafter referred to as Broker #2. Broker #2 requested the pickup of $150,000 in bulk currency, proceeds of drug trafficking, in Milwaukee, Wisconsin. The CS contacted DEA Milwaukee District Officecase agents. Case agents provided the CS with a $1.00 bill serial number, L90327227C, and an undercover telephone number to be used by the same Milwaukee Police Department undercover Police Officer. All calls and text messages to this number occurred in Spanish and were recorded.

18. On March 14, 2024, at 7:06 p.m., the undercover phone received an incoming call from Mexico-based phone number 52-3344891123. The UC answered the call and greeted the caller, a Hispanic male, hereinafter referred to as "UM." The UC and the UM recognized each other's voices from the prior money pickup conducted in Milwaukee, Wisconsin on February 23, 2024, which is described above. The UM asked if the UC could meet so they could give him some "documents," a coded reference to money. The UC said he would call the UM the next day. The UM agreed.

19. On March 15, 2024, at 9:49 a.m., the UC attempted to call 52-3344891123, but the call did not connect. On March 15, 2024, at 10:31 a.m., the undercover phone received an incoming call from Mexico-based phone number 52-3346363048. Phone number 52-3346363048 was also in contact with the UC to coordinate the money pickup of $299,480 in Milwaukee, Wisconsin on 02-23-2024. The UC answered the call and spoke to the same UM he had talked to on March 14, 2024. The UM told the UC his other phone was not working. The UC told the UM he could not meet that day, but he could meet on the following Monday. The UC and the UM agreed to meet at the same location as the last time at 9:00 a.m. on Monday, March 18, 2024. The UM also told the UC that the current pickup was for a smaller amount,

indicating "the land is very small."  The UC and the UM agreed to talk later about the meeting on Monday.

20.     From March 17, 2024, until March 24, 2024, the UC and the UM continued to communicate about the impending money pickup.  The UC and the UM ultimately agreed that the meeting would take place on March 25, 2024, at 9:00 a.m. at Kohl's, 3737 South 27th Street, Milwaukee, Wisconsin.

21.     On March 25, 2024, at 8:39 a.m., the UC received a text message from 52-3346363048 that just read, "Good morning."  At 8:42 a.m., the UC sent a text message to 52-3346363048 that asked about the money and said the UC would arrive at 9:00 a.m.  At approximately 8:57 a.m., the UC departed a pre-determined location en route to Kohl's, 3737 South 27th Street, Milwaukee, Wisconsin.  The UC was equipped with a covert recording and monitoring device which was activated prior to arriving at the Kohl's store.  At 9:01 a.m., the UC received two text messages from 52-3346363048 which greeted the UC.  At 9:02 a.m., the UC sent a text message to 52-3346363048 that said he would arrive in five minutes.  At approximately 9:04 a.m., the UC arrived at the Kohl's store and parked in the parking lot.

22.     At 9:05 a.m., the UC received a text message which asked if the UC was in the same vehicle he had been in last time.  At 9:05 a.m., the UC sent a text message back confirming the description of his vehicle.  At approximately 9:06 a.m., the UC observed the white 2016 Mercedes Benz GLC, bearing Wisconsin license plates AWM6104, stop near his undercover vehicle.  As noted above, these license plates are registered to Lisandro SANDOVAL, 2658 South 14th Street, Milwaukee, Wisconsin.  The UC observed Lisandro SANDOVAL exit the driver's seat of the Mercedes and open the front passenger door of the UC's undercover vehicle.  SANDOVAL was holding a multi-colored Milwaukee Bucks Igloo cooler.  SANDOVAL sat in

the front passenger seat of the undercover vehicle, placed the cooler on the front, passenger-side floorboard, and closed the door. The UC handed SANDOVAL the $1.00 bill bearing serial number L90327227C. The UC and Sandoval engaged in casual conversation. At 9:07 a.m., the UC received a text message from 52-3346363048 asking for the "serial number." Case agents believe this was a reference to the $1.00 bill serial number. The UC did not respond. SANDOVAL produced two cellular phones from his sweatshirt pocket and took two photos of the $1.00 bill with one of the phones. The UC asked how much (money) was in the cooler. SANDOVAL said it was $81,500. SANDOVAL appeared to be sending text messages on one of the phones. SANDOVAL asked the UC for a pen, which the UC gave to SANDOVAL. SANDOVAL wrote something on the bill, took a photo of it, and appeared to be sending another text message. SANDOVAL and the UC continued to engage in casual conversation as SANDOVAL looked at one of his phones. At approximately 9:10 a.m., SANDOVAL exited the vehicle and returned to the Mercedes. The UC then departed the Kohl's parking lot. Surveillance units maintained surveillance of SANDOVAL while other units followed the UC away from the area. SANDOVAL was observed driving back to 4210 South Ravinia Drive, Greenfield, Wisconsin, and entering the garage associated with Unit 207

23. The UC was followed to a predetermined location. Upon arrival at the predetermined location, case agents met with the UC and opened the Milwaukee Bucks Igloo cooler and then removed nine rubber-banded quantities of United States currency. Case agents transported the currency to the DEA-Milwaukee District Office. The currency, which totaled $81,500.00, was deposited to a DEA undercover bank account to be laundered further. The UC later viewed a photo of Lisandro SANDOVAL and confirmed SANDOVAL was the person who gave him the Milwaukee Bucks Igloo cooler containing the currency.

**III.** **Lisandro SANDOVAL's Use of (414) 295-1083 ("Target Cell Phone")**

24. Case agents consulted databases and identified **(414) 295-1083 (Target Cell Phone)** as a phone used by Lisandro SANDOVAL, 2658 South 14th Street, Milwaukee, Wisconsin.

25. On March 25, 2024, an administrative subpoena was sent to We Energies for information on utilities accounts of Lisandro SANDOVAL. On May 8, 2024, case agents received a response from We Energies which showed that SANDOVAL was listed on the utility account at 4210 S. Ravinia Dr. Apt 207, Greenfield, Wisconsin. The phone number listed on the account is **(414) 295-1083 (Target Cell Phone)**.

26. Case agents reviewed phone records from Verizon Wireless for **(414) 295-1083 (Target Cell Phone)**. Phone records show that SANDOVAL is in frequent and regular contact with (414) 215-1552 and (414) 708-9244. Prior law enforcement investigations in Milwaukee have identified both of these phones as being used by Juan PADILLA. As described above, a vehicle registered to PADILLA was observed conducting countersurveillance of case agents during surveillance at SANDOVAL's residence on March 18, 2024. As detailed above, Juan PADILLA was previously identified as a cocaine trafficker in the Milwaukee area. Additionally, phone records for **(414) 295-1083 (Target Cell Phone)** show that SANDOVAL is in contact with other numbers believed to be involved in drug trafficking. For example, SANDOVAL has been in contact with (414) 484-5463 22 times from February 17, 2024, through April 17, 2024. (414) 484-5463 is subscribed to by Bernice Padilla. (414) 484-5463 has been identified in phone records of other drug investigations in Milwaukee since 2012.

27. Based upon my training, experience, and familiarity with the investigation, I believe that Lisandro SANDOVAL is using **(414) 295-1083 (Target Cell Phone)** to

communicate with others to further his drug trafficking and money laundering activities. Case agents believe the location information requested will assist in identifying SANDOVAL's source(s) of supply, stash locations used by the organization, and other co-conspirators involved in his money laundering organization.

28.     In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

29.     Based on my training and experience, I know that Verizon Wireless can collect E-911 Phase II data about the location of **(414) 295-1083 (Target Cell Phone)**, including by initiating a signal to determine the location of **(414) 295-1083 (Target Cell Phone)** on Verizon Wireless' network or with such other reference points as may be reasonably available.

30. Based on my training and experience, I know that Verizon Wireless can collect cell-site data about the **(414) 295-1083 (Target Cell Phone)**.

AUTHORIZATION REQUEST

31. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

32. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 180 days after the collection authorized by the warrants has been completed. There is reasonable cause to believe that providing immediate notification of the warrants may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **(414) 295-1083 (Target Cell Phone)** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

33. I further request that the Court direct Verizon Wireless to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Verizon Wireless. I also request that the Court direct Verizon Wireless to furnish the government all information, facilities, and technical assistance necessary to accomplish the

collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon Wireless' services, including by initiating a signal to determine the location of **(414) 295-1083 (Target Cell Phone)** on Verizon Wireless' network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

34. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate **(414) 295-1083 (Target Cell Phone)** outside of daytime hours.

## <u>ATTACHMENT A</u>

Property to Be Searched

1.  The cellular telephone assigned cell number **(414) 295-1083 (Target Cell Phone)**, whose service provider is Verizon Wireless, a wireless telephone service provider headquartered in North Palm Beach, FL.

2.  Information about the location of the **(414) 295-1083 (Target Cell Phone)** that is within the possession, custody, or control of Verizon Wireless.

**ATTACHMENT B**

Particular Things to be Seized

All information about the location of the **(414) 295-1083 (Target Cell Phone)** described in Attachment A for a period of forty-five days, during all times of day and night. "Information about the location of the **(414) 295-1083 (Target Cell Phone)**includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon Wireless, Verizon Wireless is required to disclose the Location Information to the government. In addition, Verizon Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon Wireless' services, including by initiating a signal to determine the location **(414) 295-1083 (Target Cell Phone)** on Verizon Wireless' network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2). This warrant does not authorize the seizure of any tangible property. In

approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).